39 So.2d 596

**CONTINENTAL OIL CO. v. FUSELIER et al.**

**No. 38857.**

Feb. 14, 1949.

Rehearing Denied March 21, 1949.

James G. Dubuisson and Edward Dubuisson, both of Opelousas, for defendants-appellants.

Plauche & Plauche and S. W. Plauche, Jr., all of Lake Charles, for defendants-appellees.

McCALEB, Justice.

This suit involves the ownership of a 1/256th royalty interest in the oil being produced from wells located on certain lands in Jefferson Davis Parish. It was commenced as a concursus proceeding by Continental Oil Company, the purchaser of the oil. It alleged that it was unable to determine the party to whom payment of the royalty should be made because of the existence of an agreement wherein Joseph Fuselier, the record owner, transferred title to the 1/256th royalty interest to one Frantzen and himself, as trustees for a corporation to be formed in the future. Accordingly, it prayed that it be permitted to deposit the monthly amounts allocable to the royalty in the registry of the court and that all interested parties be cited to appear and assert their claims.

In due course, Joseph Fuselier and his children appeared and challenged the legality of the agreement conveying the royalty interest on several grounds. Frantzen, one McCutcheon and other royalty owners, who had entered into agreements similar to the Fuselier contract, also appeared and defended the agreement, contending for its validity in all respects.

After a trial below, there was judgment in favor of Fuselier and his children, declaring the agreement to be a nullity and

directing its cancellation and erasure from the conveyance records of Jefferson Davis Parish. Frantzen, McCutcheon and several of the other parties interested in maintaining the legality of the agreement have prosecuted this appeal.

The contract was entered into on March 25th 1937 between Joseph Fuselier, the royalty owner, Frantzen and Fuselier, as trustees, and McCutcheon, the promoter of the scheme, as party of the third part. The purpose of the agreement was the pooling of certain royalty interests of various landowners in Acadia and Jefferson Davis Parishes by providing for an assignment of fractional interests in the royalties owned by them to Frantzen and Fuselier, as trustees, and then to be later assigned to a corporation to be named "Elton Royalty Pool, Inc." (which has never been formed). Upon the creation of the corporation, the original royalty owners were to receive stock proportionate to royalties assigned by them and their combined interests would comprise 75% of the capital stock of the company. The balance, or 25%, of the stock was to be issued to McCutcheon in consideration of his efforts in selling the proposition to the various royalty owners and in repayment of expenses incurred by him in the formation of the proposed corporation. There was no master plan—that is, an agreement between all of the landowners, the trustees and McCutcheon, but each separate contract made plain the idea of the pool or

combination and was contingent upon Mc-Cutcheon's ability to secure at least 2,000 royalty acres for the pool within sixty days from the date of the agreement.[1] Other contingencies were also stipulated but the salient provisions of the agreement are as follows:

Fuselier conveyed a percentage of his entire royalty interest in 1332 acres to Frantzen and himself, as trustees. The trustees were to hold said royalty interest, as well as royalties from other landowners, until the corporation was organized. In the event oil or gas was discovered on any of the land within the pooled area, the trustees (Frantzen and Fuselier) were to immediately draft articles of incorporation for the formation of "Elton Royalty Pool, Inc." Should the trustees fail and neglect to take the necessary steps to form such corporation within a period of sixty days following the discovery and production of oil within the pooled area, then any member (royalty owner) of the pool, or Mc-Cutcheon, had the right to organize the corporation to protect the interests and rights of all parties. The agreement also contained the following condition:

"In the event such corporation is not so organized within ten years from March 25, 1937, the trustees agree to cancel, surrender and return this contract to the first parties."

And it was expressly understood that the corporation should not be formed unless oil or gas was discovered in commercial quantities upon some of the lands forming part of the pooling agreement.

Fuselier and his children assail the agreement on numerous grounds. They say that it is null (1) because it created a trust which was reprobated by the laws of this State on the date of its execution; (2) that it is inchoate and incomplete and did not become a perfected contract because McCutcheon, the real obligor, did not affix his signature thereto; (3) alternatively, that it is a nudum pactum because it lacks mutuality or serious consideration; (4) that it has become dissolved inasmuch as the corporation was not formed within ninety days after the discovery of oil, and (5) finally that, at all events, it is dissolved by its own terms because the corporation was not organized within ten years from March 25th 1937.

The judge of the district court was of the opinion that the agreement constituted a trust which was illegal and reprobated under our law at the time it was executed. While we entertain doubt as to the soundness of this view, we find it unnecessary to consider or discuss this feature of the case as we are convinced that, even if the agreement be regarded valid at the date of its execution, it is no longer in force and effect by reason of the non-fulfillment of the resolutory condition that the corporation be formed within ten years from its date.

---

[1] This condition was performed.

At the time this suit was filed, the ten year period had not elapsed. On March 25th 1947 (the deadline for the formation of the corporation), the case was under advisement in the district court. Prior to judgment, to wit, on October 7th 1947, counsel for Fuselier moved that the matter be reopened for the limited purpose of showing that the corporation had never been formed. The judge disallowed the motion and thereafter handed down his judgment.

We do not think it is of any moment that the judge refused to reopen the case as it is clear, from the above quoted provision of the contract relative to the formation of the corporation, that, if the corporation is not in esse within ten years from March 25th 1937, it becomes the trustees' bounden duty to cancel, surrender and return the contract to Fuselier. Hence, after March 25th 1947, McCutcheon, Frantzen and all other parties appellant were divested of any right or interest in the agreement [2]—for, the non-fulfillment of the resolutory condition dissolved it and the parties were restored to the positions which existed prior to its confection.

Article 2045 of the Civil Code declares:

"The dissolving condition is that which, when accomplished, operates the revoca-

tion of the obligation, placing matters in the same state as though the obligation had not existed.

"It does not suspend the execution of the obligation; it only obliges the creditor to restore what he has received, in case the event provided for in the condition takes place."

See also Articles 2046 and 2047.

The judgment appealed from is affirmed.

O'NIELL, C. J., does not take part.

---

[2] If the corporation had been formed, it would have been necessary to substitute it as a party in interest in the place of McCutcheon, Frantzen and the other appellants, as any interest which they might have had would have been transferred to the corporation.